# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

             v.

RAYKEE RASHANN SANDERS,
             *Defendant-Appellant.*

No. 03-50471

D.C. No.
CR-01-01008-
LGB-4

OPINION

Appeal from the United States District Court
for the Central District of California
Lourdes G. Baird, District Judge, Presiding

Argued and Submitted
March 7, 2005—Pasadena, California

Filed August 31, 2005

Before: Cynthia Holcomb Hall, Kim McLane Wardlaw, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Hall

**COUNSEL**

Gretchen Fusilier, Carlsbad, California, for the defendant-appellant.

Karen I. Meyer, Assistant United States Attorney, Criminal Division, Los Angeles, California, for the plaintiff-appellee.

**OPINION**

HALL, Senior Circuit Judge:

Defendant Raykee Sanders appeals his convictions for conspiracy to commit bank robbery, in violation of 18 U.S.C.

§ 371, armed bank robbery, in violation of 18 U.S.C. § 2113, using a gun during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c), and attempted witness tampering, in violation of 18 U.S.C. § 1512(b)(1). We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and affirm his conviction. Sanders also appeals his sentence, and we vacate and remand for a full resentencing hearing.

## I. BACKGROUND

Defendant Raykee Sanders planned to rob a bank on September 17, 2003, with Madrid Hopkins and Eugene Hamilton. Sanders told Hopkins that he should enter the bank and give the teller a note demanding money. Hopkins enlisted his friend, Leon Walker, to assist him in the planned robbery. Walker wanted to bring a gun into the bank. Walker and Hopkins told Sanders that Walker intended to bring a gun into the bank, and Sanders reiterated that a note would be sufficient. Sanders went on to state "that's cool, too, if you—I guess if you want to use a gun, use a gun."

Sanders, Hopkins, Hamilton, and Walker abandoned their initial attempt to rob the bank on September 17, 2003, because police cars were in the area. They returned the next day and Sanders and Hamilton acted as lookouts while Hopkins and Walker entered the bank. Inside the bank, Walker waved the gun in the air and told everyone to get down. Hopkins grabbed the assistant manager by the arm and demanded she take him to the vault. Once there, the assistant manager and another employee placed approximately $24,000-$25,000 in a bag. Hopkins then fled with Walker. They were caught shortly after the robbery because of a combination of bad luck and poor planning. A bystander saw Hopkins and Walker acting nervous while moving something from a van to a truck and immediately informed the police. The truck Hopkins and Walker used as a getaway vehicle ran out of gas shortly after they fled. Police caught up with them at a gas station, and a high speed chase ensued. Once in police custody, Hopkins

cooperated with police and eventually Sanders and Hamilton were apprehended during a traffic stop.

Prior to their respective trials, Hopkins and Sanders were placed in the same jail. While there, Sanders asked Hopkins to lie to the police and tell them that Sanders had nothing to do with the bank robbery. Hopkins and Sanders were later both moved to a second jail where they spoke to each other through the vents on several occasions. During these vent conversations Sanders asked Hopkins if he was going to testify against him, and Sanders told Hopkins that he would receive a document. Another inmate later delivered a typewritten declaration to Hopkins, which was purportedly from Hopkins and addressed to Sanders's attorney. The declaration falsely stated, in part, that "Mr. Sanders was not involved in any way with the planning or execution of the U.S. Bank robbery." The declaration included Hopkins's booking number, which Hopkins had previously given to Sanders. Hopkins testified that he signed the declaration in fear that if he did not, other inmates would think he was a snitch and would potentially harm him.

Hopkins also received a number of written notes, known as "kites," signed with Sanders's nicknames, "Smiley" or "S. Kay." These kites asked whether Hopkins was going to testify against Sanders and offered Hopkins favors. Hopkins sent a response to one of these kites to "Smiley" on 5 South, where Sanders was housed, requesting cigarettes. Hopkins subsequently received cigarettes.

At Sanders's trial, Hopkins testified to what Sanders said through the vents and to what he wrote in the kites. Sanders objected to Hopkins's testimony, arguing that it was inadmissible hearsay, but the district court ultimately ruled that it was a party admission[1] and thus admissible, or in the alternative,

---

[1]"A statement is not hearsay if . . . (2) [t]he statement is offered against a party and is (A) the party's own statement. . . ." Fed. R. Evid. 801(d).

that it was admissible under the catch-all exception to the hearsay rule.[2]

After all the evidence was in, the judge instructed the jury. On the issue of attempted witness tampering, the judge defined "corruptly persuades" under 18 U.S.C. § 1512 as "motivated by an inappropriate or improper purpose to convince another person." The jury found Sanders guilty on all counts, including attempting to "corruptly persuade" Hopkins. The pre-sentencing report recommended a sentence ranging from 87-108 months for armed bank robbery and witness tampering. The district court judge sentenced Sanders to 97 months. Sanders was sentenced to an additional 60 months for conspiracy to commit bank robbery, to be served concurrently, and to 60 months for Walker's use of a gun, to be served consecutively. Sanders timely appeals his convictions and sentencing.

## II.  DISCUSSION

### A.  Hopkins's Testimony

We review the district court's decision to admit evidence for an abuse of discretion. *United States v. Warren*, 25 F.3d 890, 894 (9th Cir. 1994).

---

[2]This rule provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807.

**[1]** Sanders objected to Hopkins's testimony concerning the vent and kite conversations, arguing that it was inadmissible hearsay. To admit such testimony, the district judge must make a preliminary finding that Sanders was the inmate who communicated with Hopkins through the vents and kites. *United States v. Gil*, 58 F.3d 1414, 1419 (9th Cir. 1995) ("When evidence is admitted subject to the jury's finding that a threshold condition is satisfied, '[t]he judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition.' " (citation omitted). The district judge made this finding. She held that "the evidence supports a finding by preponderance of the evidence that those statements through the vents and those kites . . . were statements by the defendant." This preliminary finding is supported by substantial evidence because (1) Hopkins claimed that he recognized Sanders's voice; (2) he claimed that Sanders knew his booking number, and that this booking number was written on the declaration; (3) Hopkins received a response to a kite he sent to Sanders; (4) although other inmates also wanted to prevent Hopkins from snitching, no other inmate had any significant interest in getting Hopkins to sign a declaration stating that "Mr. Sanders was not involved in any way with the planning or execution of the U.S. Bank robbery."

**[2]** Any statements that Sanders made to Hopkins were non-hearsay because the judge found that Sanders was the inmate who communicated with Hopkins through the vents and kites. *See* Fed. R. Evid. 801(d). Therefore, the district judge did not abuse her discretion by admitting Hopkins's testimony because she made the appropriate preliminary finding which was supported by substantial evidence.

## B.   Firearm Conviction

When reviewing convictions for sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Segura-Gallegos*, 41 F.3d 1266, 1268 (9th Cir. 1994) (internal quotation marks omitted).

[3] Sanders argues that there was insufficient evidence to support his conviction under 18 U.S.C. § 924(c)[3] for Walker's use of a gun during the bank robbery. Sanders is liable for Walker's use of a gun if (1) Walker used the gun "in furtherance of the conspiracy;" (2) Walker's use of the gun "fell within the scope of the unlawful project;" and (3) Walker's use of the gun "could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement." *United States v. Douglass*, 780 F.2d 1472, 1475-76 (9th Cir. 1986). Sanders only challenges whether Walker's use of the gun was foreseeable.

[4] Viewed in the light most favorable to the government, a rational trier of fact could conclude that Walker's use of the gun was foreseeable. Hopkins testified that he and Walker "agreed to use the gun" while in the presence of Sanders and

---

[3]This section provides:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—(i) be sentenced to a term of imprisonment of not less than 5 years; (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c).

that Sanders then said "that's cool, too, if you—I guess if you want to use a gun, use a gun." The fact that Sanders did not order Walker to use the gun, and did not definitively know that Walker had the gun on the day of the robbery, does not make it *unforeseeable* that Walker would do exactly what he said he would do: use the gun.

Sanders's argument based on *United States v. Castaneda*, 9 F.3d 761 (9th Cir. 1993), is unavailing. *Castaneda* held that due process concerns sometimes dictate that a conspirator with a "slight" involvement in the conspiracy and underlying felony cannot be said to foresee a co-conspirator's use of a gun. *Id*. at 766, 768. Although the judge found that Sanders was not a unitary "mastermind," she found that Sanders planned the robbery along with Hamilton. Sanders gave Hopkins explicit directions in robbing the bank. He told Hopkins to jump over the counter with a note, to hold the bank doors open with door stoppers, and to place the money into water to destroy any tracking devices. Thus, Sanders's involvement was not "slight" and *Castaneda* does not apply. *Id.* at 766-68 (finding a "slight" involvement when a spouse assisted her husband, a more active conspirator, "only insofar as she acted as his spouse: answering her home phone, taking messages from callers and answering his questions when he called").

**[5]** Sanders's conviction under § 924(c) is clearly supported by substantial evidence.

### C.   Jury Instructions

When a defendant does not object to jury instructions at trial, as here, we review those instructions for plain error. *United States v. Klinger*, 128 F.3d 705, 710 (9th Cir. 1997). A judge commits plain error when there is:

> (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to

notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.

*Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (citation and internal quotation marks omitted); *see also United States v. Recio*, 371 F.3d 1093, 1100 (9th Cir. 2004). An error is plain when it is "clear and obvious." *United States v. Fuchs*, 218 F.3d 957, 962 (9th Cir. 2000).

Sanders objected to the district court's jury instruction on the charge that Sanders violated 18 U.S.C. § 1512[4] by attempting to "corruptly persuade[ ]" Hopkins to not testify against Sanders. The district court instructed the jury that "corruptly persuades" means "to be motivated by an inappropriate or improper purpose to convince another person to engage in a course of behavior, namely, to interfere with trial testimony." Sanders requested that the district court instruct the jury that an individual can attempt to persuade another not to testify without doing so "corruptly" if both parties possess the Fifth Amendment privilege against self-incrimination.

**[6]** Even if the trial judge erred, any such error was not "plain" and did not "affect the substantial rights" of the defendant. The error here, if any, was not clear and obvious. One year prior to Sanders's trial, we noted there was a circuit split over whether a defendant violates § 1512 when he attempts to persuade others to invoke their Fifth Amendment right to remain silent. *United States v. Khatami*, 280 F.3d 907, 913 (9th Cir. 2002) ("[T]here is a difference in approach among the circuits about whether merely attempting to persuade a witness to withhold cooperation or not to disclose information

---

[4]This section states "Whoever knowingly . . . corruptly persuades another person, or attempts to do so, . . . with intent to—(1) influence, delay, or prevent the testimony of any person in an official proceeding . . . shall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 1512(b).

to law enforcement officials—as opposed to actively lying—falls within the ambit of § 1512(b).”). We declined to rule on the issue, leaving the question open in this circuit. *Id.* at 913-14 (“We need not join in this debate to resolve the case before us.”). Thus, the correct interpretation of § 1512 was not clear and obvious. *See United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir. 1997) (noting that to be clear and obvious an error must be “so clear-cut, so obvious, [that] a competent district judge should be able to avoid it without benefit of objection”).

**[7]** Even if any error were clear and obvious at the time of trial, Sanders cannot meet his burden of showing that the alleged error affected his substantial rights. In order to show that his substantial rights were affected, Sanders must show that the error “affected the outcome of the district court proceedings.” *United States v. Olano*, 507 U.S. 725, 734 (1993). Because Hopkins testified that Sanders told him to lie, and the declaration included several misstatements, Sanders cannot show that there is a reasonable probability that the jury would have reached a different result if given his proffered instruction. *See United States v. Williams*, 990 F.2d 507, 512 (9th Cir. 1993) (finding no prejudice for plain error purposes in erroneous jury instruction because there was “considerable circumstantial evidence” of element that was misdescribed to the jury).

### D.   Witness Tampering

When reviewing convictions for sufficiency of the evidence, we must determine “whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” *Segura-Gallegos*, 41 F.3d at 1268 (internal quotation marks omitted).

**[8]** Sanders argues that his conviction for witness tampering is not supported by substantial evidence. Sanders asked

Hopkins to perjure himself by testifying that Sanders was not involved in the bank robbery, and by signing a declaration that stated that "Mr. Sanders was not involved in any way with the planning or execution of the U.S. Bank robbery." Considering the evidence in the light most favorable to the government, a rational trier of fact could have concluded that Sanders attempted to "corruptly persuade[ ]" Hopkins to alter his testimony. 18 U.S.C. § 1512(b). There was also substantial evidence to show that it was Sanders who communicated these requests to Hopkins because (1) Hopkins claimed that he recognized Sanders's voice; (2) he claimed that Sanders knew his booking number, and that this booking number was written on the declaration; (3) Hopkins received a response to a kite he sent to Sanders; (4) although other inmates also wanted to prevent Hopkins from snitching, no other inmate had any significant interest in getting Hopkins to sign a declaration stating that "Mr. Sanders was not involved in any way with the planning or execution of the U.S. Bank robbery."

## E.    Sentencing Issues

**[9]** Sanders's sentence violates the Sixth Amendment because the judge's extra-verdict findings were applied under a now-defunct mandatory guideline scheme. *United States v. Booker*, 125 S. Ct. 738 (2005). Because Sanders did not challenge his sentence on Sixth Amendment grounds in the district court, we would normally grant a limited remand pursuant to *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). However, the fact that the original sentencing judge has since retired changes this result.

**[10]** Our decision in *Ameline* to adopt a limited remand approach was based on three premises. First, most district court records will not contain enough information to allow this court to perform a meaningful plain error analysis. *Ameline*, 409 F.3d at 1082 (noting that the record is "potentially misleading"); *id.* at 1083 n.6 (noting that review would require "rank speculation"). Second, a limited remand is the

"only practical way (and it happens also to be the shortest, the easiest, the quickest, and the surest way) to determine whether there was prejudice." *Id.* at 1079 (internal quotation marks omitted). Third, the original sentencing judge can quickly and accurately decide whether he or she would have issued a materially different sentence had the guidelines been advisory. *Id.* Here, the purposes underlying *Ameline* are nullified because the original sentencing judge is unavailable and therefore a limited remand is not the appropriate solution in this case. We hold that when the original sentencing judge is not available to conduct a limited remand pursuant to *Ameline*, the original sentence should be vacated and the case remanded for a full resentencing hearing.

The Second Circuit faced the issue of an unavailable original sentencing judge in *United States v. Garcia*, 413 F.3d 201, 226 (2d Cir. 2005), and held that a limited remand was appropriate with two caveats. First, the court held that the proper prejudice inquiry must be altered to ask whether the new district court judge would have given the defendant a materially different sentence, rather than asking the new district court judge if the original sentencing judge would have given the defendant a materially different sentence, knowing the Sentencing Guidelines were merely advisory. *Id.* at 228. Second, the Second Circuit held that the new district court judge "must order the defendant produced in open court . . . and must afford him an opportunity to be heard." *Id.* at 230 (noting that an exception to this requirement will be granted if both parties agree to waive the defendant's appearance and the court consents).

**[11]** Concurring in the *Garcia* opinion, Judge Calabresi noted that this modified limited remand "is identical, in its effects, to a remand for a post-*Booker* new sentence." *Id.* at 231 (Calabresi, J., concurring). We agree with Judge Calabresi's reasoning and adopt it here. There is no substantive difference between the modified limited remand endorsed by the *Garcia* court and a full resentencing hearing. Whether the

new district judge is imposing a new sentence in a full resentencing hearing, or determining in a *Garcia* modified limited remand whether he or she would have imposed a materially different sentence than that imposed by the original judge, a full review of the record is required. Further, in both cases the defendant must be produced and given an opportunity to be heard. We believe the *Garcia* modified limited remand approach is not *limited* in any material sense. Accordingly, rather than obscure the issue with misleading terminology, we elect to vacate the original sentence and remand for a full resentencing hearing. Because the purposes underlying *Ameline* are frustrated by the subsequent unavailability of the original sentencing judge, we hold that under these circumstances the appropriate response to *Booker* error is to vacate the original sentence and remand for a full resentencing hearing.

**AFFIRMED IN PART, VACATED and REMANDED IN PART.**