# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

             v.

KORAN MCKINLEY ALLEN, a/k/a
Sinbad,
                    *Defendant-Appellant.*

No. 04-50205

D.C. No.
CR-02-00904-WJR-
04

OPINION

Appeal from the United States District Court
for the Central District of California
William J. Rea, District Judge, Presiding

Argued and Submitted
August 1, 2005—Pasadena, California

Filed October 18, 2005

Before: William C. Canby, Jr., Alex Kozinski, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rawlinson

14319

**COUNSEL**

Phillip I. Bronson, Encino, California, for defendant-appellant Koran McKinley Allen.

Dorothy C. Kim and Jason de Bretteville, Assistant United States Attorneys, Los Angeles, California, for plaintiff-appellee United States of America.

**OPINION**

RAWLINSON, Circuit Judge:

A jury convicted Koran McKinley Allen of conspiracy to commit armed bank robbery, armed bank robbery, and using, carrying, or possessing a firearm during a crime of violence. On appeal, Allen maintains that there was insufficient evidence to support his firearm conviction; that the admission of a co-conspirator's statement violated his Sixth Amendment right of confrontation; that a government witness's allusion to Allen's previous incarceration warranted a mistrial; that the district court failed to appreciate that it had discretion to depart downward on Allen's sentence based on a tragic personal history and the disproportionate impact of a prior con-

viction; and that the enhancement of his sentence using judge-found facts violated the Sixth Amendment. We affirm the convictions and, because the sentencing judge is no longer available, we order a remand for resentencing pursuant to *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc), and *United States v. Sanders*, 421 F.3d 1044, 1052 (9th Cir. 2005).

# I

## *BACKGROUND*

Allen and his co-conspirators robbed the Community Bank in Pasadena, California, of $21,619. The plan was organized by Larry Washington and his longtime friend, Derrick O'Neal. The two of them, along with co-conspirator Edward Warren, drove to Pasadena the day before the robbery and selected Community Bank as the target. O'Neal recruited three co-conspirators to assist with the robbery, and Washington told O'Neal that Washington "was going to bring a crew that he had used in another robbery." According to FBI Special Agent Taglioretti's testimony, he was informed by O'Neal of Washington's prior statement to O'Neal that Washington recruited Jerry Hughes, Allen, and another individual.[1]

On the morning of the robbery, all involved, including Allen, met in front of Warren's home to organize and discuss the logistics of the robbery. The use of firearms was discussed, and Washington took a bag full of guns out of his Pathfinder truck, around which all the participants had gathered. Hughes also displayed his gun during the meeting. The meeting ended when Warren's mother began looking out the window of the home.

---

[1]Telephone records indicate that Washington called Allen on the evening before the robbery.

The robbers drove to Pasadena in four vehicles: a maroon van that O'Neal had stolen to use as a getaway car; Washington's white Pathfinder; a gray Escort; and a rental car. Allen, who was designated as a getaway driver, drove the maroon van. When they arrived in Pasadena, all four cars met behind the bank in a parking area. Eventually, five members of the crew entered the bank. Allen remained behind.

During the robbery, Hughes and another co-conspirator displayed their firearms. Hughes also used his gun to strike two bank employees. One of these employees was knocked unconscious and taken to the emergency room for a CAT scan. Upon exiting the bank, the robbers walked toward the maroon van, but Allen was not in it. As a result, the five robbers drove away in the Escort.

Warren and O'Neal remained in O'Neal's car during the robbery.[2] They were planning to drive away from the bank, turn around, and drive back. As they were heading back toward the bank, Washington called O'Neal, explaining that he needed a ride because his truck would not start. At approximately the same time, O'Neal and Warren saw Allen walking down the street and summoned him into the vehicle. Washington phoned O'Neal a second time, and, as the two were speaking, O'Neal spotted Washington on the corner. Washington entered the backseat of the car and attempted to lie down to hide himself from view.

Officer Shannon Reece of the Pasadena Police Department was on patrol when she heard over the police radio that the Community Bank had been robbed. While Reece was at an intersection, a car stopped on the opposite side of the traffic light drew her attention. When she proceeded through the intersection, she noticed a passenger in that car attempting to hide in the backseat, so she made a U-turn and initiated a traf-

---

[2]It appears that Washington also remained in his vehicle during the robbery.

fic stop of the vehicle. The four individuals in the car—O'Neal, Warren, Washington, and Allen—were taken into custody later that day.

All those involved in the robbery were charged with one count of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371, one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and one count of using, carrying, or possessing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Allen was convicted on all counts, and sentenced to 319 months imprisonment after the district court applied several enhancements to Allen's base offense level. This appeal followed.

## II

### *DISCUSSION*

#### A. Sufficiency of the Evidence

Allen's motion for a judgment of acquittal was denied by the district court. Allen contends that there is insufficient evidence to support his conviction for using, carrying, or possessing a firearm because the evidence failed to establish that he could reasonably foresee the use of firearms during the robbery.

The denial of a motion for a judgment of acquittal is reviewed *de novo*. *United States v. Bello-Bahena*, 411 F.3d 1083, 1087 (9th Cir. 2005). "We must view the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation omitted).

**[1]** Under § 924(c), it is a crime to use or carry a firearm during a crime of violence or to possess a firearm in furtherance of such a crime. 18 U.S.C. § 924(c)(1)(A) (2000 & Supp.

2005). Although Allen did not himself use, carry, or possess a gun in furtherance of the robbery,[3] he could be convicted as a co-conspirator. *See Pinkerton v. United States*, 328 U.S. 640, 647 (1946). The *Pinkerton* rule holds "a conspirator criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." *United States v. Long*, 301 F.3d 1095, 1103 (9th Cir. 2002) (citing *Pinkerton*, 328 U.S. at 645-48). Thus, the government "is not required to establish that [Allen] had actual knowledge of the gun[s]"; rather, "[t]he touchstone is foreseeability." *United States v. Hoskins*, 282 F.3d 772, 776 (9th Cir. 2002) (citation omitted).

**[2]** The district court committed no error in denying Allen's motion for a judgment of acquittal. Allen was present at the "morning of" meeting where guns were present and their use was discussed; he had a longstanding friendship with co-conspirator O'Neal who had participated in previous armed bank robberies; and, it is reasonable to infer from the nature of the plan—the overtaking of a bank by force and intimidation—that guns would be used. *See id.* at 777 (upholding a conviction under § 924(c) premised on co-conspirator liability where the defendant participated in two meetings at which the robbery was planned, was involved romantically with one of the co-conspirators who had participated in similar armed robberies, and because the nature of the plan, which required the use of force or intimidation to overtake the cash room at a K-Mart, made the use of a gun reasonably foreseeable.).

**B.   Confrontation Clause Claim**

Relying on *Crawford v. Washington*, 541 U.S. 36 (2004), Allen contends that Washington's statement to O'Neal about whom Washington was recruiting into the conspiracy was

---

[3]Robbery is a crime of violence. *See United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993).

inadmissible hearsay, and its introduction violated Allen's right of confrontation. Allen cites two instances where Washington's statement was impermissibly allowed into evidence: O'Neal's testimony that Washington told him he was bringing in his "crew"; and Agent Taglioretti's testimony that O'Neal told him whom Washington had recruited.

Because Allen failed to object to Washington's statement on Confrontation Clause grounds, we review for plain error. *See United States v. Huber*, 772 F.2d 585, 588 (9th Cir. 1985).[4] Confrontation Clause violations are also subject to harmless error analysis. *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004).

**[3]** In *Crawford*, the Court held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68. However, co-conspirator statements are not testimonial and therefore beyond the compass of *Crawford*'s holding. *See id.* at 56 (describing "statements in furtherance of a conspiracy" as "statements that by their nature [are] not testimonial"); *see also United States v. Delgado*, 401 F.3d 290, 299 (5th Cir. 2005); *United States v. Rashid*, 383 F.3d 769, 777 (8th Cir. 2004).

**[4]** Therefore, Washington's statement to O'Neal, as a statement made in furtherance of the conspiracy, was not testimonial, and its introduction did not violate the Confrontation Clause. Additionally, although O'Neal's statement to Agent Taglioretti was "testimonial" under *Crawford*, *see Crawford*, 541 U.S. at 53 (holding that statements made to law enforcement "fall squarely within that class" of testimonial hearsay covered by the Sixth Amendment), because O'Neal was avail-

---

[4]Allen does not challenge the admission of Washington's statement on hearsay grounds. Rather, he asserts that the hearsay nature of the statement violated his rights under the Confrontation Clause.

able as a witness and cross-examined by Allen, the admission of O'Neal's out-of-court statement did not violate Allen's Sixth Amendment rights under *Crawford*.[5] *See id.* at 59 n.9 ("[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.") (citation omitted).

Finally, even if the statements complained of were improperly admitted, any error was harmless, as there was overwhelming evidence connecting Allen to the conspiracy. *See United States v. Bowman*, 215 F.3d 951, 961-62 (9th Cir. 2000) (holding that Confrontation Clause violation, if any, was harmless beyond a reasonable doubt, as there was other evidence linking defendant to the conspiracy beyond a reasonable doubt.). Allen was arrested in the same vehicle as three other conspirators as they attempted to flee the scene of the robbery, and both O'Neal and Alexander identified Allen as a participant in the conspiracy.

## C.  Denial of Requested Mistrial

During his cross-examination of O'Neal, Allen's counsel asked O'Neal how often he had seen Allen, and O'Neal responded "When he got out of jail." Allen immediately made

---

[5]Nor does the admission of these statements implicate *Bruton v. United States*, 391 U.S. 123 (1968). *Bruton* precludes the admission of a defendant's confession implicating a co-defendant during a joint trial. *Id.* at 123-24, 135-37. However, that is not the situation before us. Washington, having pled guilty, was not a co-defendant in Allen's trial, and Washington's statement to O'Neal about whom Washington had recruited was not a confession; rather, it was a statement made by a co-conspirator during and in furtherance of the conspiracy and thus not barred by *Bruton*. *See United States v. McCown*, 711 F.2d 1441, 1448 (9th Cir. 1983) (finding *Bruton* inapplicable to statements made by a co-conspirator in furtherance of a conspiracy.). Additionally, to the extent that O'Neal's statement to Taglioretti occurred during O'Neal's confession, O'Neal was not a co-defendant, having pled guilty, and was also subjected to cross-examination at Allen's trial.

a motion for a mistrial. The government agreed that O'Neal's answer should be stricken and insisted that the court admonish the jury to disregard it. The court did so and denied Allen's motion. Allen appeals the denial of his motion. We review the district court's denial of the motion for an abuse of discretion. *United States v. Allen*, 341 F.3d 870, 891 (9th Cir. 2003).

**[5]** We conclude that the district court acted within its discretion. O'Neal's isolated reference to Allen's prior incarceration did not warrant a mistrial. *See United States v. Yarbrough*, 852 F.2d 1522, 1540 (9th Cir. 1988) ("[I]solated references to [defendant's] prior prison record did not warrant a mistrial."), and any resulting prejudice dissipated when the district court immediately gave a curative instruction to the jury. *See United States v. Parks*, 285 F.3d 1133, 1141 (9th Cir. 2002) (finding no abuse of discretion when the district court denied defendant's motion for a mistrial because the district court "admonished the jury to disregard the statement."). Moreover, there was overwhelming evidence of Allen's guilt, so any error was harmless. *See, e.g.*, *Allen*, 341 F.3d at 892 (affirming the denial of a motion for a mistrial because there was ample evidence of defendant's guilt.).

## D.    Allen's Sentence

**[6]** Allen argues that the district court erred in failing to grant him a downward departure to his sentence based on a tragic personal history and the disproportionate impact of a prior conviction. Because the district court appeared to be aware of its authority to depart downward, denial of Allen's request is not reviewable. *See United States v. Berger*, 103 F.3d 67, 69 (9th Cir. 1996). However, Allen and the government agree that a remand is appropriate under *Ameline*. Because the sentencing judge is no longer available, the sentence is vacated and this case is remanded "for a full resentencing hearing." *Sanders*, 421 F.3d at 1052.

## III

### *CONCLUSION*

There was sufficient evidence presented during the trial to enable a rational jury to conclude that the use of firearms during the bank robbery was reasonably foreseeable to Allen. The admission of a co-conspirator's statement made during and in furtherance of the conspiracy did not violate Allen's right to confront adverse witnesses, and no mistrial was warranted for a brief, isolated reference to Allen's prior incarceration. Although the district court's denial of Allen's request to depart downward is not reviewable, the parties agree that a remand of Allen's sentence is appropriate. Because the sentencing judge is no longer available, resentencing is warranted.

**CONVICTION AFFIRMED**; **SENTENCE VACATED**; **REMANDED FOR RESENTENCING**.