*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 15, 2024
2:35 PM

Plaintiff-Appellee,

v

No. 368004
Marquette Circuit Court
LC No. 12-050218-FH

ROSCOE RICO MARTIN,

Defendant-Appellant.

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Defendant, Roscoe Rico Martin, appeals as of right the trial court's order sentencing him to 7 to 30 years in prison for extortion, MCL 750.213, and as a second offense habitual offender, MCL 769.10. We affirm.

## I. FACTS

In 1989, defendant was convicted of second-degree murder and sentenced to 50 to 76 years in prison.[1] While imprisoned with the Michigan Department of Corrections, defendant sent two letters to a corrections officer at the prison threatening to accuse the officer of arranging a "hit" on a prisoner unless the officer transferred $10,000 to an attorney whom defendant was attempting to hire to file an appeal on his behalf.[2] After a jury trial, defendant was convicted of extortion, MCL 750.213, and as a second offense habitual offender, MCL 769.10. Defendant's sentencing guidelines were calculated at 78 to 162 months. The Marquette Circuit Court, Judge Thomas L. Solka presiding, sentenced defendant within the guidelines to 7 to 30 years in prison to be served consecutive to his sentence for second-degree murder.

---

[1] *People v Martin*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2015 (Docket No. 319400), p 1.

[2] *Id*.

This Court affirmed defendant's sentence,[3] and our Supreme Court thereafter denied defendant leave to appeal.[4] Defendant then moved for relief from judgment in the trial court, which the trial court denied. This Court denied defendant's delayed application for leave to appeal.[5]

Defendant petitioned the United States District Court for the Western District of Michigan for a writ of habeas corpus, asserting that he was entitled to resentencing because he had been sentenced before our Supreme Court issued its decision in *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015), which held that Michigan's sentencing guidelines are advisory only. The federal district court remanded the case to the Marquette Circuit Court for a "limited *Crosby*[6] hearing," directing the circuit court to "conduct a new sentencing hearing only if it finds that it would have imposed a materially different sentence had the guidelines been advisory and not mandatory."

On remand, the Marquette Circuit Court, Judge Jennifer A. Mazzuchi presiding, conducted a *Crosby* hearing, at the conclusion of which the circuit court determined that it would not have imposed a materially different sentence had it known that the sentencing guidelines were advisory only. Defendant now appeals as of right, challenging his sentence.

## II. DISCUSSION

## A. SUCCESSOR JUDGE

Defendant contends that the trial court erred by declining to resentence him during the *Crosby* remand. Defendant argues that he was entitled to resentencing because the judge conducting the *Crosby* remand was a successor judge rather than the judge who originally sentenced him. We disagree.

Whether a trial court complied with the requirements of a *Crosby* hearing is a question of law that this Court reviews de novo. See *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023) (This Court reviews de novo questions of law); *People v Anderson*, 326 Mich App 747, 751; 929 NW2d 835 (2019) (This Court reviews de novo whether a trial court followed a remand order). Defendant, however, did not raise before the circuit court the specific argument that he was entitled to resentencing on the basis that the judge conducting the *Crosby* hearing was not the judge who sentenced him originally, and thereby failed to preserve the argument for appellate review. See *People v Brown*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 359376); slip op at 2 ("When a party raises a separate argument on appeal than the party raised before the trial court, the party must satisfy the standard for plain-error review"). An error is plain

---

[3] *Id.*

[4] *People v Martin*, 500 Mich 887 (2016).

[5] *People v Martin*, unpublished order of the Court of Appeals, issued June 28, 2017 (Docket No. 337047).

[6] *United States v Crosby*, 397 F3d 103 (CA 2, 2005), abrogated on other grounds by *United States v Fagans*, 406 F3d 138 (CA 2, 20). See *United States v Smith*, 949 F3d 60, 65 (2020).

if it is clear or obvious and affected the defendant's substantial rights, meaning that the error affected the outcome of the lower court proceedings. *Lockridge*, 498 Mich at 392-393.

In *Lockridge*, our Supreme Court determined that Michigan's sentencing guidelines are advisory only, necessitating remand in certain cases where sentences were imposed before the date of the *Lockridge* opinion. *Lockridge*, 498 Mich at 364-365, 391, 397. Our Supreme Court concluded that in cases in which a *Crosby* remand was required,

> . . . the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing.

> * * *

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. [*Lockridge*, 498 Mich at 397-398.]

Defendant contends that because in this case the *Crosby* remand was conducted by a successor judge rather than the trial judge who sentenced him originally, resentencing is required by federal law, specifically in light of *United States v Sanders*, 421 F3d 1044 (CA 9, 2005) and *United States v Bonner*, 440 F3d 414 (CA 7, 2006). This issue was addressed by this Court in *People v Howard*, 323 Mich App 239, 247-253; 916 NW2d 654 (2018), in relevant part:

> Relying on federal caselaw, defendant contends that because his original sentencing judge is unavailable to conduct the *Crosby* remand, due process requires that he be entitled to a full resentencing. . . .

> Federal courts of appeal are divided on the issue of what is required when the sentencing judge is unavailable to conduct a *Crosby* remand or similar procedure. Defendant urges us to adopt the approach set forth by the United States Court of Appeals for the Seventh Circuit. In *United States v Paladino*, 401 F3d 471, 483-484 (CA 7, 2005), the Seventh Circuit adopted a modified *Crosby* procedure. In those cases in which the Seventh Circuit could not determine from the record whether a defendant's pre-*Booker* [*United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 261 (2005)] sentence constituted prejudicial error, the court would "order a limited remand to permit the *sentencing judge* to determine whether he would (if required to resentence) reimpose his original sentence." *Paladino*, 401 F3d at 484 (emphasis added). Later, in *United States v Bonner*, 440 F3d 414 (CA 7, 2006), the Seventh Circuit faced the issue whether a judge other than the "sentencing judge" could conduct a *Paladino* remand. In concluding that it could not, the Seventh Circuit reasoned that, in order to be confident that the

-3-

sentencing judge would have given the same sentence subsequent to *Booker* that it gave prior to *Booker*, analysis under *Paladino* had to be conducted by the "original 'sentencing judge.' " *Bonner*, 440 F3d at 416. When the sentencing judge was unavailable, there was "no purpose in restricting a newly assigned judge to comparing the sentence he would impose post-*Booker*, armed with the knowledge that the guidelines are advisory, to the sentence initially imposed by a different judge operating under the assumption that the guidelines were mandatory." *Id*. at 417. Therefore, the Seventh Circuit in *Bonner* held that when the original sentencing judge was unavailable to preside over a remand under *Paladino*, the appeals court would "vacate the defendant's sentence and remand for a complete resentencing hearing in order to permit the successor judge to sentence the defendant in conformity with the mandates of *Booker*." *Id*. See also *United States v Sanders*, 421 F3d 1044, 1052 (CA 9, 2005) ("We hold that when the original sentencing judge is not available to conduct a limited remand . . . , the original sentence should be vacated and the case remanded for a full resentencing hearing.").

Unlike a *Paladino* remand, our Supreme Court in *Lockridge* did not describe a *Crosby* remand as going back to the sentencing judge but rather as going back to the "trial court." *Lockridge*, 498 Mich at 398. However, cases on remand in Michigan are always sent back to the judge who entered the judgment or order, whenever possible, and *Lockridge* did not address or appear to contemplate a circumstance in which the original sentencing judge is no longer available.

Assuming we do not agree with defendant's claim of entitlement to a full resentencing – which would arguably give somewhat of a windfall to all defendants whose sentencing judges are no longer available – defendant alternatively urges this Court to adopt the analysis set forth in *United States v Garcia*, 413 F3d 201 (CA 2, 2005). In *Garcia*, the United States Court of Appeals for the Second Circuit expressly addressed the issue of how to handle *Crosby* remands when the original sentencing judge is no longer available. The Second Circuit acknowledged the language in *Crosby* that called for review by the "sentencing judge" but opined that such language "simply recognizes the practical reality that most *Crosby* remands . . . will likely be addressed by the original sentencing judge." *Garcia*, 413 F3d at 226. . . . However, the appeals court determined that when the original sentencing judge is no longer available, the district court's ability to provide a reliable response to a *Crosby* remand does not abruptly cease:

> The judgment appealed from, after all, is that of the district court, not simply that of a particular judge. Thus, the comparative sentence inquiry might properly be viewed as between the court's challenged sentence and the sentence *the court* would have imposed with a proper understanding of the law. Where the original sentencing judge is no longer available to speak for the district court on the second point, the responsibility for identifying the sentence that the court would have imposed under a correct view of the law may properly be reassigned to another district judge. . . .

. . . [T]he fact that all district judges possess direct sentencing experience, considered together with their ability to develop factual records, necessarily means that such judges can reliably determine, even on reassignment, whether there is a nontrivial difference between a challenged original sentence and one that would have been imposed with a correct understanding of the law. [[*Garcia*, 413 F3d] at 227-228.]

\* \* \*

Nevertheless, the Second Circuit in *Garcia* did require something more of newly assigned judges that remained optional for the original sentencing judge under *Crosby*. When making his or her threshold determination regarding whether resentencing is warranted, a newly assigned judge must order the defendant to appear in court and afford the defendant an opportunity to be heard. *Id*. at 230. The Second Circuit gave two reasons for this requirement. First, because "human insights important to sentencing cannot be gleaned simply from a review of a cold record," the Second Circuit deemed the defendant's appearance and opportunity to be heard necessary to the district court's achieving the level of familiarity with the case necessary for "a reliable sentencing comparison." *Id*. Second, the Second Circuit considered production of the defendant to be important to the perceived integrity of the resentencing decision, . . .

\* \* \*

The *Garcia* court acknowledged that "a *Crosby* remand may operate less efficiently when the original sentencing judge is no longer available," *id*., but it concluded that it would nevertheless operate "with sufficient reliability that, even in this limited category of cases, we remain committed to case-by-case review of plain error rather than wholesale assumptions that substantial rights were affected in no or all such cases," *id*. at 231. Thus, the Second Circuit upheld the propriety of a *Crosby* remand in the event of a newly assigned judge but imposed additional requirements to ensure that the remand procedure was sufficiently fair and reliable under the circumstances.

We find the Second Circuit's rationale in *Garcia* to be persuasive and its solution reasonable. When a newly assigned judge handles a *Crosby* remand without ever encountering the defendant, both the personal nature of sentencing, . . . and the perceptions of the fairness, integrity, and public reputation of the judicial proceeding are called into question. We conclude that when the original sentencing judge is unavailable, in addition to following the other *Crosby* remand requirements, the assigned judge must allow the defendant an opportunity to appear before the court and be heard before the judge can decide whether he or she would resentence the defendant. [*Howard*, 323 Mich App at 247-253 (footnotes omitted).]

In this case, defendant contends that resentencing is required in light of *Bonner* and *Sanders*. This Court in *Howard* rejected this argument and adopted the reasoning of *Garcia*, and

this Court is bound to follow *Howard*. See MCR 7.215(J)(1). Here, in accordance with *Lockridge*, the trial court permitted defendant an opportunity to inform the court whether he was seeking resentencing. See *Lockridge*, 498 Mich at 397-398. The trial court also ensured that defendant was present in person for the *Crosby* remand hearing, as directed by *Howard* and *Crosby*. At the *Crosby* hearing, the trial court stated:

> The hearing today was scheduled because, at the last hearing, which was noticed to be by ZOOM, Mr. Martin was informed that the Court had determined he had the right to be here in person if he wished to be. And he indicated that he did want to. And so we set this today for in person. The reason for that is that in the *Crosby* Remand Process, if the – the Judge determining whether a materially different sentence would have been imposed is not the sentencing Judge, then the Defendant has the opportunity to appear, and be heard, before the Court makes that decision.

The trial court then determined that it would not have imposed a materially different sentence had the court known that the sentencing guidelines were advisory only, and therefore under *Lockridge*, resentencing was not required. The trial court complied with the directives of *Lockridge* and *Howard* and did not err by declining to resentence defendant.

## B. DEFENDANT'S PRETRIAL MOTIONS

Defendant contends that he is entitled to resentencing because the trial court improperly considered his *in pro per* pretrial motions when determining whether he was entitled to resentencing, which defendant argues is tantamount to penalizing him for using the judicial process. We disagree.

This Court reviews the trial court's factual determinations when sentencing a defendant for clear error, while reviewing de novo the trial court's application of facts to law. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated by *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019).

During the *Crosby* hearing in this case, the trial court provided defense counsel an opportunity to address the trial court on the limited issue whether the trial court should conclude that it would have imposed a substantially different sentence had the trial court been aware that the sentencing guidelines were advisory only. After defense counsel made an argument on behalf of defendant, the trial court gave defendant an opportunity to address the trial court. Defendant then addressed the trial court about the calculation of his sentencing guidelines, jurisdiction, ineffective assistance of counsel, the sentencing practices of the Marquette Circuit Court, the sufficiency of the evidence supporting his conviction, the false testimony of the witnesses during the jury trial, and that he was wrongfully sentenced as a habitual offender. After defendant's statement, the trial court issued its decision, stating:

> All right. The issue before the Court, again, is whether it would have issued a materially different sentence had it not been constrained by the Sentencing Guidelines being, not exactly mandatory, but requiring substantial and compelling reasons for departure, as opposed to the post-*Lockridge* where they are advisory.

So, you know, in reviewing the Pre-Sentence Report, I understand that there was a challenge at the time of sentencing on OV19, but the --- the Guideline range is calculated at 78 to 162 months. The sentence that was imposed by the trial court was 84 months, which is, you know, slightly above the minimum range. And then had the maximum calculated given the Habitual Offender status. And so it was 84 months to 30 years. So seven years.

The Prosecutor had argued at the time of the sentencing hearing that the minimum sentence be higher on the Guideline range, such that it be a 9 or 10 year on the minimum sentence of 108 months to 120.

This was a jury trial. And so the jury concluded that the Defendant was guilty.

The – the subject that's outlined in the description of the offense in the Pre-Sentence Report was the content of a letter that was sent to a corrections officer, was intercepted prior to her receipt, but was – had a demand for $10,000, and a request that it be sent to an attorney in Lower Michigan.

Evidence that the Court has reviewed from the transcripts of the trial court included fingerprint evidence and other scientific evidence tying this letter to Mr. Martin.

Mr. Martin's testimony at the time of trial contained a variety of allegations that he had been . . . that law enforcement, as well as the Prosecutor who was trying the case, had tried to work with him to get him to be an informant. And that this was a set-up as a part of that. There was very detailed testimony about a driving route, and naming certain highways, and certain locations in describing this route that he allegedly took with the testifying detective, who testified that he wasn't working in that capacity at the time at issue.

In short, the jury concluded that this, obviously, that this testimony was incredible, because they issued a conviction in the case.

Among the considerations of a sentencing judge is the credibility of Defendant's testimony, if the Defendant chooses to exercise the right to testify. And the Court did state in the sentencing transcript that it was entirely incredible. And the Court would --- this Court would share that conclusion.

I think in looking at the Guideline range, even without considering any, you know, restraint of it, of course, the Court always calculates the Guideline range, and considers it as kind of a starting point. This Court would also give considerable weight to the Defendant's allegations that are, frankly, many in number and also incredible.

There were also multiple pre-trial efforts to file motions *in pro per* with various allegations and repeated disregard for the Court's order to not do that if the

-7-

person's represented by an attorney. There was strong scientific evidence at trial connecting Mr. Martin to this letter.

The --- I think what weighs on the other side of this is that quite fortunately the letter actually was never delivered to its intended recipient. And so while that's not a legal requirement, and the Defendant's intent is really a significant element in what was designed to be the plan, it fortunately didn't cause the impact that it was designed to or had the potential to cause.

And so when we're looking at this 78 to 162 month range, it's the Court's conclusion, and it's this Court's conclusion, that it would not have imposed a materially different sentence.

I think what's notable in the prior criminal history when we look at the Pre-Sentence Report is that Mr. Martin's been incarcerated since age 16 for a serious homicide offense. And so obviously that --- there's been lengthy time in the institution during which, according to the Pre-Sentence Report, there were 90 plus major misconducts. And he remained in Level V.

And then this offense was committed within the institution, and had this desired extortion effect, that fortunately, again, did not have that impact.

And so we look --- when we look at the sentencing range, this Court determines, considering all of those factors, and the testimony at trial, and the relevant sentencing considerations, that it would not have imposed a materially different sentence.

The trial court's reference to defendant's pretrial motions appears to be an acknowledgement of the various arguments defendant stated on the record immediately preceding the trial court's ruling. Moreover, the trial court mentioned defendant's pretrial motions as part of its observation that defendant continually had been dishonest with the court in the defense of his actions. The trial court noted that an appropriate consideration when sentencing a defendant who has testified is the credibility of the defendant. The trial court observed that in this case, the evidence supporting defendant's conviction was substantial, and that the jury had found defendant guilty and thus had rejected his testimony that law enforcement and the prosecution had conspired to falsely accuse him. The trial court observed that it similarly found defendant's claims to be incredible. In this context, the trial court noted that defendant also had disregarded the trial court's instruction that he not file motions *in pro per* given that he was represented by counsel. Defendant points to no evidence suggesting that the trial court penalized him for using the judicial process, and contrary to defendant's argument, the record suggests that the trial court was simply weighing defendant's credibility, including his disregard for the trial court's instructions, as one consideration in determining whether the trial court would impose the same sentence. Defendant thus failed to demonstrate that the trial court improperly penalized him for filing pretrial motions.

## C. PROPORTIONALITY OF SENTENCE

Defendant contends that remand is warranted so that the trial court can determine whether defendant's sentence was proportional under *People v Posey*, 512 Mich 317; 1 NW3d 101 (2023), which defendant argues should be applied retroactively. We disagree.

Michigan's Constitution requires that a sentencing decision be proportional. *People v Parks*, 510 Mich 225, 241; 987 NW2d 161 (2022). At the time defendant in this case was sentenced in 2013, MCL 769.34(10) precluded the review of the proportionality or reasonableness of defendant's within-guidelines sentence. Thereafter, in *Posey*, our Supreme Court held MCL 769.34(10) to be unconstitutional to the extent that it precluded review of a within-guidelines sentence, and held that a within-guidelines sentence is reviewable for proportionality. *Posey*, 512 Mich at 356. Proportionality of a within-guidelines sentence is presumed and the defendant has the burden to demonstrate that the sentence is not proportional. *Id*. at 357-359.

This Court recently discussed the possibility of retroactive application of *Posey* in *People v Brown*, unpublished per curiam opinion of the Court of Appeals, issued June 6, 2024 (Docket No. 365205). In that case, this Court's lead opinion (SERVITTO, J.) observed that whether *Posey* had retroactive application had not been decided previously; assuming, without deciding, that *Posey* applied retroactively, this Court affirmed the defendant's sentence in that case as proportional. *Id*. at p 10-11. In his concurrence, Judge Redford discussed at length his conclusion that *Posey* does not apply retroactively in a collateral proceeding:

> Generally, "judicial decisions are to be given complete retroactive effect." *People v Barnes*, 502 Mich 265, 268; 917 NW2d 577 (2018) (quotation marks and citation omitted). However, when a judicial decision announces a new rule, retroactive application of that rule does not extend to cases which have already become final, because, "at some point, the rights of the parties should be considered frozen and a conviction . . . final" *Id*. . . . Certain exceptions, however, permit retroactive application on collateral review. *Id*.
>
> Both federal and state standards govern the retroactivity of new legal principles to criminal cases that have become final and are subject to collateral review. *Id*. at 268-269. The federal standard was laid out in the plurality opinion in *Teague v Lane*, 489 US 288; 109 S Ct 1060; 103 L Ed 2d 334 (1989). "Under *Teague*, a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced." *Montgomery v Louisiana*, 577 US 190, 198; 136 S Ct 718; 193 L Ed 2d 599 (2016). However, *Teague* recognized an exception to the general bar against retroactivity for new substantive rules of law, which are defined as "rules forbidding criminal punishment of certain primary conduct" and "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Id*. . . ; *Teague*, 489 US at 307.
>
> The first question under the federal framework is whether the rule announced in *Posey* constitutes a new rule. See *Barnes*, 502 Mich at 269. A new rule "breaks new ground or imposes a new obligation on the States or the Federal Government." *Id*. . . . When deciding whether a rule is new, a reviewing court must determine "whether a state court considering [the defendant's] claim at the time his conviction

became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." *Id*. at 270. . . .

In *Posey*, our Supreme Court announced that within-guidelines sentences must be reviewed for reasonableness on appeal. *Posey*, 512 Mich at 355-356. In announcing this holding, the Supreme Court overruled the portion of *People v Schrauben*, 314 Mich App 181; 886 NW2d 173 (2016), that required the Court of Appeals to affirm a sentence if the defendant's minimum sentence was within the recommended guidelines minimum sentence range. *Posey*, 512 Mich at 349. The Court also struck the portion of MCL 769.34(10) which required the affirmation of within-guidelines sentences on appeal absent an error scoring the guidelines or evidence that the trial court relied on inaccurate information when sentencing a defendant as unconstitutional. *Id*. By overturning existing precedent, *Posey* announced a new rule. See *Barnes*, 502 Mich at 269.

The second question under the federal framework is whether the new rule is a substantive rule of constitutional law. In *Barnes*, our Supreme Court concluded that the holding in *Lockridge*, 498 Mich at 391, that Michigan's previously mandatory sentencing guidelines were only advisory, was not retroactive. *Barnes*, 502 Mich at 268. The Court explained that *Lockridge* did not announce a substantive rule because "it applies neither to primary conduct nor to a particular class of defendants but rather adjusts how the sentencing process functions once any defendant is convicted of a crime." *Id*. at 271. Like *Lockridge*, *Posey* only concerns the sentencing process once a defendant is convicted of a crime. Consequently, *Posey* did not create a new substantive rule of constitutional law. Therefore, *Posey* is not retroactively applicable to cases on collateral review under the federal framework.

Application of our state retroactivity test leads to the same conclusion. Under our state retroactivity test, we consider the following three factors:

> (1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice. [*Barnes*, 502 Mich at 273 (quotation marks and citation omitted).]

Under the first factor, a new rule is amenable to prospective application when the purpose of the new rule "is not relevant to the ascertainment of guilt or innocence and does not implicate the integrity of the fact-finding process." *Id*. . . . "[T]he first factor must be afforded more weight than either of the other two factors when the first factor does 'clearly favor' retroactivity or prospectivity.". . . . The second and third factors may be considered together "because the amount of past reliance will often have profound effect upon the administration of justice." *Barnes*, 502 Mich at 273 n 6 (quotation marks and citation omitted).

Under the first factor, retroactive application is favored when the new rule is relevant to ascertainment of guilt or innocence or implicates the integrity of the fact-finding process. *Id*. at 273. *Posey*'s holding that within-guidelines sentences

are subject to proportionality review does not concern the ascertainment of guilt or innocence. Instead, *Posey* concerns the imposition of a sentence after a defendant has been found guilty. Likewise, *Posey* does not implicate the integrity of the fact-finding process. . . . The first factor counsels against retroactive application of *Posey* to cases on collateral review.

As noted earlier, the first factor is afforded heightened weight over the second and third factor when it clearly favors retroactivity or prospectivity. . . . In this case, the second and third factor also counsel against retroactive application of *Posey* to cases on collateral review.

Both the second factor, the general reliance on the old rule, and third factor, the effect on the administration of justice, favor prospective application. Apparent from legislative mandate, there was widespread reliance by the bench and bar on the requirement that appellate courts affirm within-guidelines sentences absent an error in scoring the sentencing guidelines or inaccurate information relied on in determining a defendant's sentence. MCL 769.34(10) was enacted in 1994 with an effective date in December 1998, 1994 PA 445, and held unconstitutional in 2023, *Posey*, 512 Mich at 349. The decision in *Lockridge* cast doubt on the constitutionality of this statute, but this Court interpreted *Lockridge* to have kept MCL 769.34(10) intact in 2016. *Schrauben*, 314 Mich App at 196 n 1. Between that 25-year period, myriad defendants were sentenced within the guidelines. Consideration of the defendants sentenced to within-guidelines between the decisions in *Schrauben* and *Posey* alone is substantial. Because of the general reliance on the old rule, retroactive application of *Posey* would be disruptive to the administration of justice. Potentially every criminal defendant sentenced within-guidelines during these timeframes would be eligible for relief. Consequently, the second and third factors also favor prospective application on collateral review.

[R]etroactive application of *Posey* to final convictions on collateral review is not warranted under either the federal or Michigan frameworks. A conviction becomes final when the availability of direct review is exhausted and the time to seek a writ of certiorari has expired. *People v Gomez*, 295 Mich App 411, 414-415; 820 NW2d 217 (2012). Defendant's crimes took place on July 7, 2016. He was tried by a jury, convicted, and subsequently sentenced on July 25, 2017. The State Supreme Court declined review of this Court's judgment affirming defendant's conviction on February 4, 2020. Defendant had 90 days from entry of the State Supreme Court's order to seek a writ of certiorari in the United States Supreme Court and failed to do so. . . . *Posey* was decided on July 31, 2023, three years after defendant's conviction became final. As a result, defendant is not now entitled to a remand on proportionality. [*Brown*, (REDFORD, J., concurring), unpub op at 2-4 (footnotes omitted).]

Judge Redford's concurring opinion makes a persuasive argument that *Posey* is not applicable retroactively in a collateral proceeding. In addition, requiring a proportionality review during a *Crosby* remand would add a requirement to the review process not imposed by the Supreme Court. As discussed, a trial court conducting a *Crosby* remand is required to determine

whether that court would have imposed a materially different sentence had the court known that the sentencing guidelines were advisory only. On remand, the trial court must first give the defendant an opportunity to inform the court that he or she will not seek resentencing, obtain the views of counsel, hold a hearing within the discretion of the trial court, and have the defendant present if the trial court decides to resentence the defendant. *Lockridge*, 498 Mich at 397-398. If, as in this case, the judge conducting the *Crosby* remand is a successor judge, the trial court also must permit the defendant to be present before deciding whether to resentence the defendant. *Howard*, 323 Mich App at 247-253. Requiring the trial court to specifically consider the proportionality of the sentence would impose a requirement upon a *Crosby* remand that is beyond the requirement imposed by *Lockridge*. In addition, in this case, it would exceed the scope of the remand order. See *People v Lampe*, 327 Mich App 104, 111-112; 933 NW2d 314 (2019) (When an appellate court remands a case with specific instructions, the trial court may not exceed the scope of the remand order).

Moreover, within the *Crosby* remand process, the trial court is required to state whether it would impose the same sentence. Implicit in that process is a finding by the trial court that the sentence imposed is reasonable; if the trial court found the sentence unreasonable, the trial court no doubt would order resentencing. In this case, the trial court during the *Crosby* remand considered all the information that a sentencing judge would consider, such as the evidence presented at trial, defendant's credibility, the guideline range, that the letters attempting to extort the guard never were delivered and the harm therefore was minimized, and defendant's previous conviction. The trial court complied with the remand order and the requirements of a *Crosby* remand. Defendant was not entitled to further review of his sentence for proportionality in this case.

Affirmed.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado