# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JUSTIN DUANE HOWARD,

      Defendant-Appellant.

FOR PUBLICATION
February 27, 2018
9:10 a.m.

No. 336150
Calhoun Circuit Court
LC No. 2012-003518-FC

Before: CAVANAGH, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Defendant, Justin Duane Howard, appeals as of right the circuit court's order stemming from a *Crosby*[1] remand, which was ordered because defendant's within-the-guidelines sentence was imposed prior to the Michigan Supreme Court's ruling in *People v Lockridge*, 498 Mich 358, 870 NW2d 502 (2015).[2] Because the sentencing judge was no longer available at the time of the remand, a newly assigned judge reviewed defendant's case and ruled that he would not have imposed a materially different sentence. Therefore, he declined to resentence defendant. Defendant contends that the trial court failed to follow the proper procedure in a *Crosby* remand, and that because the sentencing judge was no longer available, he should either have received a

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

[2] *Lockridge* held that Michigan's sentencing guidelines violate a defendant's Sixth Amendment fundamental right to a jury trial and are deficient to the extent they require judicial fact finding beyond facts admitted by the defendant or found by a jury to score offense variables that mandatorily increase the floor of the guidelines minimum sentence range. *Lockridge*, 498 Mich at 364, 373-374. The Supreme Court remedied the violation by making the guidelines advisory only. *Id*. at 364, 391. It remanded to the trial court cases "in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment" for a determination of "whether that court would have imposed a materially different sentence but for the constitutional error." *Id*. at 397. "If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Id*. The Supreme Court adopted a remand procedure as set forth in *Crosby*, discussed in salient detail in this opinion.

full resentencing or at least an opportunity to appear before the court and be heard before the judge made his decision. We agree in part with defendant, and thus, we vacate the trial court's order and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise out of an October 2012 incident in which defendant and another man broke into Pearlie Parker's home in Battle Creek, Michigan, stole money, and assaulted Parker with a firearm. A jury convicted defendant of armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), and assault with a dangerous weapon, MCL 750.82. The trial court sentenced him as a habitual offender, second offense, MCL 769.10, to concurrent prison terms of 30 to 60 years for armed robbery, 10 to 30 years for first-degree home invasion, and three to six years for assault with a dangerous weapon.[3]

In his initial appeal, defendant challenged his convictions on grounds that he was denied a speedy trial and that the trial court erred by denying his motion to suppress a witness identification. This Court affirmed his convictions in an unpublished per curiam opinion,[4] and defendant subsequently applied for leave to appeal in the Michigan Supreme Court. After our Supreme Court denied defendant's application, defendant moved for reconsideration, arguing in part that he was entitled to a *Crosby* remand and resentencing pursuant to *Lockridge*, 498 Mich at 395-398. The Supreme Court vacated its prior order and, in lieu of granting leave, remanded defendant's case to the trial court "to determine whether the court would have imposed a materially different sentence under the sentencing procedure described in [*Lockridge*]." *People v Howard*, 500 Mich 852; 884 NW2d 284 (Mem) (2016). The Supreme Court further instructed, "On remand, the trial court shall follow the procedure described in Part IV of [*Lockridge*]." *Id*.

The original sentencing judge was unavailable to conduct the *Crosby* remand, having retired from the bench and subsequently passed away. The successor judge who replaced him on the bench had been the prosecutor in the instant case. She entered an order of disqualification and the case was assigned to a different judge. The newly assigned judge did not appoint an attorney to represent defendant for the *Crosby* remand or seek any input from defendant or defense counsel. In his order on remand, which he entered within days of being assigned the case, the judge noted that he had reviewed the presentence report, transcripts, and court file from defendant's case, as well as the *Lockridge* opinion, and determined that he would not impose a materially different sentence. Defendant, acting *in propria persona*, moved for reconsideration, arguing that he was denied his constitutional right to counsel and due process pursuant to Const 1963, art 1, § 20, and that the trial court erred by not obtaining the views of defense counsel before making his determination. The trial court denied defendant's motion for reconsideration, which led to this appeal as of right.

---

[3] All three minimum sentences were within the guidelines range as scored by the trial court.

[4] *People v Howard*, unpublished per curiam opinion of the Court of Appeals, issued November 17, 2015 (Docket No. 322868).

## II. *CROSBY* REMAND REQUIREMENTS

Defendant first argues that the trial court erred by failing to comply with the required procedure for *Crosby* remands. We agree.

The *Lockridge* Court provided the following instructions for a trial court conducting a *Crosby* remand:

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. [*Lockridge*, 498 Mich at 398 (citation omitted).]

Defendant contends that the trial court erred by not appointing and obtaining the views of defense counsel prior to determining whether resentencing was warranted. The prosecution does not dispute that trial courts must follow the steps outlined in *Lockridge* for *Crosby* remands, but restricts their applicability to situations in which a trial court determines that resentencing is warranted. In other words, once the trial court determines that it would have imposed a materially different sentence but for the mandatory nature of the sentencing guidelines, then the court should give the defendant an opportunity to decline resentencing and should seek the views of counsel. And if the trial court decides that resentencing is not warranted, none of the other steps are necessary.

The prosecution cites no authority for this strained interpretation of the *Lockridge* Court's instructions. In our view, the procedure proposed by the prosecution contrasts with the Supreme Court's statement, "a trial court considering a case on a *Crosby* remand should *first and foremost* include an opportunity for a defendant to avoid resentencing by promptly notifying the [trial] judge that resentencing will not be sought." *Lockridge*, 498 Mich at 398 (quotation marks and citation omitted; emphasis added).[5] It also ignores the Supreme Court's next statement that "[i]f the defendant does not so notify the court, it 'should obtain the views of counsel, at least in writing . . . in 'reaching its decision . . . whether to resentence.' " *Id.*, quoting *Crosby* 397 F3d at 120. Furthermore, having a trial court review the record and determine whether resentencing is

---

[5] See also *People v Stokes*, 312 Mich App 181, 201-202; 877 NW2d 752 (2015) (noting that the "first step" of the *Crosby*-remand procedure is to provide the defendant with an opportunity to avoid resentencing), vacated in part on other grounds, *People v Stokes*, __ Mich __; 903 NW2d 194 (Mem) (2017); *People v Steanhouse*, 313 Mich App 1, 48; 880 NW2d 297 (2015) (again noting that the "first step" in the remand procedure is to provide the defendant with an opportunity to avoid resentencing), aff'd in part, reversed in part on other grounds, *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017).

warranted before providing a defendant the opportunity to avoid resentencing constitutes a waste of judicial resources in those cases where the defendant does not want to risk a harsher sentence. Thus, we reject the prosecution's characterization of the order of steps in a *Crosby* remand and agree with defendant that before deciding whether to resentence, the trial court was required to obtain the views of defense counsel.

The record on remand contains no indication that defendant was given an opportunity to inform the court that he would not seek resentencing. The record is also devoid of any indication that the trial court complied with the requirement that it "should obtain the views of counsel." *Lockridge*, 498 Mich at 398. In fact, it appears that defendant did not have an attorney at the time of the *Crosby* remand. In a procedure designed to address whether defendant's sentence was affected by unconstitutional sentencing constraints and where soliciting input from defense counsel is specifically required of the trial court, defendant was entitled to representation at the time of the *Crosby* remand. See *People v Pubrat*, 451 Mich 589, 595; 548 NW2d 595 (1996) ("[s]entencing is a critical stage at which defendant has a right to counsel"). And because the trial court failed to appoint counsel and obtain the views of that counsel, we conclude that defendant's *Crosby* remand was improperly handled. Thus, we vacate the trial court's order and remand for further proceedings. Because we are remanding this matter, it is necessary for us to consider defendant's second argument on appeal regarding the impact of a remand to a judge other than the sentencing judge in a *Crosby* remand.

## III.  IMPACT OF *CROSBY* REMAND BEFORE A DIFFERENT JUDGE

Relying on federal caselaw, defendant contends that because his original sentencing judge is unavailable to conduct the *Crosby* remand, due process requires that he be entitled to a full resentencing. In the alternative, he argues that he should at least be entitled to appear before the judge and have an opportunity to be heard before the court determines whether it would resentence him under the now-advisory sentencing guidelines. Defendant raises an issue of first impression for Michigan.

Federal courts of appeal are divided on the issue of what is required when the sentencing judge is unavailable to conduct a *Crosby* remand or similar procedure. Defendant urges us to adopt the approach set forth by the United States Court of Appeals for the Seventh Circuit. In *United States v Paladino*, 401 F3d 471, 483-484 (CA 7, 2005), the Seventh Circuit adopted a modified *Crosby* procedure.[6] In those cases where the Seventh Circuit could not determine from the record whether a defendant's pre-*Booker*[7] sentence constituted prejudicial error, the court

---

[6] The procedure adopted by the Seventh Circuit differs from *Crosby* in that the Seventh Circuit Court of Appeals retains jurisdiction over a case until the district court determines that resentencing is warranted; at that point, the appeals court vacates the prior sentence and remands the matter to the district court for resentencing. *United States v Paladino*, 401 F3d 471, 484 (2005).

[7] In *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005), the United States Supreme Court held that the federal sentencing guidelines violated the Sixth Amendment

would "order a limited remand to permit the *sentencing judge* to determine whether he would (if required to resentence) reimpose his original sentence." *Paladino*, 401 F3d at 484 (emphasis added). Later, in *United States v Bonner*, 440 F3d 414 (CA 7, 2006), the Seventh Circuit faced the issue of whether a judge other than the "sentencing judge" could conduct a *Paladino* remand. In concluding that it could not, the Seventh Circuit reasoned that, in order to be confident that the sentencing judge would have given the same sentence subsequent to *Booker* that it gave prior to *Booker*, analysis under *Paladino* had to be conducted by the "original 'sentencing judge.' " *Bonner*, 440 F3d at 416. When the sentencing judge was unavailable, there was "no purpose in restricting the newly assigned judge to comparing the sentence he would impose post-*Booker*, armed with the knowledge that the guidelines are advisory, to the sentence initially imposed by a different judge operating under the assumption that the guidelines were mandatory." *Id*. at 417. Therefore, the Seventh Circuit in *Bonner* held that where the original sentencing judge was unavailable to preside over a remand under *Paladino*, the appeals court would "vacate the defendant's sentence and remand for a complete resentencing hearing in order to permit the successor judge to sentence the defendant in conformity with the mandates of *Booker*."[8] *Id*. See also *United States v Sanders*, 421 F3d 1044, 1052 (CA 9, 2005) ("We hold that when the original sentencing judge is not available to conduct a limited remand . . . , the original sentence should be vacated and the case remanded for a full resentencing hearing.").

Unlike a *Paladino* remand, our Supreme Court in *Lockridge* did not describe a *Crosby* remand as going back to the sentencing judge, but rather, as going back to the "trial court." *Lockridge*, 498 Mich at 398. However, cases on remand in Michigan are always sent back to the judge who entered the judgment or order, whenever possible, and *Lockridge* did not address or appear to contemplate a circumstance where the original sentencing judge is no longer available.

Assuming we do not agree with defendant's claim of entitlement to a full resentencing— which would arguably give somewhat of a windfall to all defendants whose sentencing judges are no longer available—defendant alternatively urges this Court adopt the analysis set forth in *United States v Garcia*, 413 F3d 201 (CA 2, 2005). In *Garcia*, the United States Court of Appeals for the Second Circuit expressly addressed the issue of how to handle *Crosby* remands where the original sentencing judge is no longer available. The Second Circuit acknowledged

---

by allowing a court to impose a sentence above the statutory maximum on facts not submitted to a jury and proved beyond a reasonable doubt or admitted by the defendant. *Lockridge*, 498 Mich at 371, citing *Booker*, 542 US at 226. To remedy the constitutional violation, the High Court made the guidelines advisory rather than mandatory. *Id*. at 371-372, citing *Booker*, 542 US at 245.

[8] The *Bonner* Court indicated that "[t]he procedure we establish today is applicable whenever the original sentencing judge is unavailable to carry out a remand from this court in accordance with the terms set forth in *Paladino*, regardless of whether the judge is unavailable due to recusal, retirement, absence, death, sickness or other disability." *Id*. at 417. We likewise see no reason to distinguish among the reasons why a judge different from the sentencing judge is assigned to the case.

the language in *Crosby* that called for review by the "sentencing judge," but opined that such language "simply recognizes the practical reality that most *Crosby* remands . . . will likely be addressed by the original sentencing judge." *Garcia*, 413 F3d at 226. But the Second Circuit also noted that due to his or her familiarity with the case, the original sentencing judge would be in the best position to conduct an efficient and reliable analysis under *Crosby*. *Id.* at 227. However, the appeals court determined that when the original sentencing judge is no longer available, the district court's ability to provide a reliable response to a *Crosby* remand does not abruptly cease:

> The judgment appealed from, after all, is that of the district court, not simply that of a particular judge. Thus, the comparative sentence inquiry might properly be viewed as between the court's challenged sentence and the sentence *the court* would have imposed with a proper understanding of the law. Where the original sentencing judge is no longer available to speak for the district court on the second point, the responsibility for identifying the sentence that the court would have imposed under a correct view of the law may properly be reassigned to another district judge.

***

> . . . [T]he fact that all district judges possess direct sentencing experience, considered together with their ability to develop factual records, necessarily means that such judges can reliably determine, even on reassignment, whether there is a nontrivial difference between a challenged original sentence and one that would have been imposed with a correct understanding of the law. [*Id*. at 227-228.]

Thus, whereas the *Bonner* Court stressed the subjectivity of individual judges in sentencing, the *Garcia* court stressed that, while district court judges are not fungible, they have direct sentencing experience and could determine from the record whether the original sentence was affected by unconstitutional sentencing restraints as identified in *Booker*. Further, the *Garcia* Court made clear that it did not expect a newly assigned judge to do the impossible, "i.e., determine what sentence the original judge would have imposed on behalf of the court with a correct understanding of the law and a fully developed record." *Id*. at 228. Rather, the newly assigned judge was to determine "what sentence *he* or *she* would have imposed on behalf of the court with the benefit of *Booker* and a full record . . . and then determine whether that lawful sentence differs in more than a trivial manner from the one that was actually imposed." *Id*.

Nevertheless, the Second Circuit in *Garcia* did require something more of newly assigned judges that remained optional for the original sentencing judge under *Crosby*. When making its threshold determination regarding whether resentencing is warranted, a newly assigned judge must order the defendant to appear in court and afford the defendant an opportunity to be heard. *Id*. at 230. The Second Circuit gave two reasons for this requirement. First, because "human insights important to sentencing cannot be gleaned simply from a review of a cold record," the Second Circuit deemed the defendant's appearance and opportunity to be heard necessary to the district court's achieving the level of familiarity with the case necessary

-6-

for "a reliable sentencing comparison." *Id*. Second, the Second Circuit considered production of the defendant to be important to the perceived integrity of the resentencing decision, explaining as follows:

> [A]lthough the production of a defendant may not be essential to the perceived integrity of a *Crosby* remand handled by the original sentencing judge, *see United States v Crosby*, 397 F3d at 120 (holding that defendant's presence in court is not required on remand to decide *if* sentencing is necessary), when a *Crosby* remand is reassigned to a judge who has never dealt with the defendant, both the parties' and the public's perception of the fairness of the process is enhanced by requiring that judge to have some direct contact with the defendant in a formal court proceeding before answering the remand inquiry . . . . [*Id*. at 230]

The *Garcia* court acknowledged that "a *Crosby* remand may operate less efficiently when the original sentencing judge is no longer available," but it concluded that it would nevertheless operate "with sufficient reliability that, even in this limited category of cases, we remain committed to case-by-case review of plain error rather than wholesale assumptions that substantial rights were affected in no or all such cases." *Id*. at 231. Thus, the Second Circuit upheld the propriety of a *Crosby* remand in the event of a newly assigned judge, but imposed additional requirements to ensure that the remand procedure was sufficiently fair and reliable under the circumstances.

We find the Second Circuit's rationale in *Garcia* to be persuasive and its solution reasonable. When a newly assigned judge handles a *Crosby* remand without ever encountering the defendant, both the personal nature of sentencing, *People v Heller*, 316 Mich App 314, 319; 891 NW2d 541 (2016),[9] and perceptions of the fairness, integrity, and public reputation of the judicial proceeding are called into question. We conclude that when the original sentencing judge is unavailable, in addition to following the other *Crosby* remand requirements[10] the assigned judge must allow the defendant an opportunity to appear before the court and be heard before the judge can decide whether it would resentence the defendant. Because that opportunity was not given to defendant in this matter, and because he was deprived of counsel and the input

---

[9] We ruled in *Heller* that a trial court may not sentence a defendant via videoconference because the intensely personal nature of the sentencing process calls for direct contact. *People v Heller*, 316 Mich App 314, 319-321. The trial court's initial determination on a *Crosby* remand is not a sentencing in the same sense as that addressed in *Heller*, and if the trial court should decide to resentence the defendant subsequent to a *Crosby* remand, the court must have the defendant present. *Lockridge*, 498 Mich at 398. However, in those unique and presumably rare situations where a newly assigned judge conducts a *Crosby* remand for a defendant that has never appeared before the trial court, the analysis more closely resembles the type of situation seen in *Heller* than where the *Crosby* remand is conducted by a sentencing judge familiar with the defendant and the defendant's case.

[10] See *Lockridge*, 498 Mich at 398.

of counsel at the time of the *Crosby* remand, we vacate the trial court's order and remand for further proceedings.

We vacate defendant's sentence and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering