*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DUC VAN NGUYEN,

        Defendant-Appellant.

UNPUBLISHED
August 11, 2022

No. 357031
Midland Circuit Court
LC No. 12-005140-FH

Before: SAWYER, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right the lower court's order entered following a *Crosby*[1] hearing denying defendant's request for resentencing. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 14, 2012, a jury convicted defendant of assault with intent to do great bodily harm less than murder, MCL 750.84, assault with a dangerous weapon, MCL 750.82, and third-offense domestic violence, MCL 750.81(2) and (4). Defendant committed the crimes during a dispute with his unarmed roommate on May 9, 2012. Defendant struck his roommate multiple times with a meat cleaver. The trial court calculated the guidelines minimum sentence range of 34 to 134 months for defendant's assault with intent to do great bodily harm less than murder. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 11 years (132 months) to 30 years' imprisonment for assault with intent to do great bodily harm, and 10 to 15 years' imprisonment each for assault with a dangerous weapon and third-offense domestic violence.

Defendant appealed and this Court affirmed. *People v Duc Van Nguyen*, unpublished per curiam opinion of the Court of Appeals, issued May 15, 2014 (Docket No. 314193). Defendant sought leave to appeal to our Supreme Court but it denied leave because defendant failed to

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

persuade the Court that the questions presented should be reviewed. *People v Duc Van Nguyen*, 497 Mich 947; 857 NW2d 34 (2014). Defendant petitioned for writ of certiorari but the United States Supreme Court denied the petition. *Duc Van Nguyen v Michigan*, 576 US 1008; 135 S Ct 2811; 192 L Ed 2d 854 (2015). On May 27, 2015, defendant next moved in the trial court for relief from judgment. Because the judge who presided over defendant's case had retired, a new judge was assigned to the case and denied the motion. Defendant filed a delayed application for leave to appeal the trial court's denial of his motion for relief from judgment and this Court denied the application. *People v Duc Van Nguyen*, unpublished order of the Court of Appeals, entered February 26, 2016 (Docket No. 330122). Defendant filed an application for leave to appeal to our Supreme Court which denied leave because he failed to meet his burden of establishing entitlement to relief under MCR 6.508(D). *People v Duc Van Nguyen*, 500 Mich 932; 889 NW2d 265 (2017).

Defendant then petitioned for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan which granted in part the petition on the ground that the trial court imposed his sentence under the mandatory sentencing guidelines which the court found violated *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013). The federal court ordered defendant's case remanded to the trial court for proceedings consistent with the court's decision to be commenced within 180 days.[2] A notice of remand, the federal court's judgment, and its opinion and order were filed in the trial court on October 7, 2020. On March 8, 2021, the circuit court gave the parties notice that a status conference would be held on March 17, 2021. The court appointed attorney, Leland Burton, on March 9, 2021, to represent defendant in the proceedings.[3] The court conducted a status conference on March 17, 2021, and thereafter sent notice that the court would hold a hearing on April 1, 2021, via Zoom regarding resentencing. The Michigan Department of Corrections prepared and distributed to the circuit court, the prosecution, and defense counsel an updated presentence investigation report (PSIR).

On remand, on April 1, 2021, as in 2015, the assigned judge was the same. This judge presided over and commenced a *Crosby* hearing.[4] Defendant attended remotely via Zoom, and his court-appointed attorney appeared on his behalf.[5] Defense counsel alerted the court that defendant had filed a motion. The court acknowledged that defendant had raised an issue regarding the

---

[2] *Nguyen v Barrett*, unpublished opinion and order granting in part the petition for a writ of habeas corpus and remanding for resentencing, entered October 1, 2020 (ED Mich, Case No. 2:17-cv-11294); *Nguyen v Barrett*, unpublished judgment entered October 1, 2020, (ED Mich, Case No. 2:17-cv-11294).

[3] Burton previously served as defendant's trial counsel during the 2012 trial.

[4] Defendant, in pro se, filed a motion in the federal court for relief on the ground that the state circuit court failed to resentence him within 180 days as specified in the federal court's opinion and order, and judgment. Defendant, in pro se, also filed objections in the lower court to the timeliness of the *Crosby* hearing, arguing that the court was in contempt of the federal court's order to resentence him, had erred by appointing attorney Burton as his counsel because Burton had represented him previously and provided ineffective assistance, and he asserted that the federal court had opined that defendant could have been eligible for parole years ago.

[5] Defense counsel entered an appearance dated March 9, 2021.

court's jurisdiction on the ground that the 180 days in which the court had to begin resentencing proceedings had expired on March 29, 2021. The court noted that the order required the state court to initiate sentencing proceedings within 180 days. The court ruled that the prosecution had initiated the proceedings within the specified timeframe. The court then inquired whether defendant desired to be resentenced. The court permitted defendant to address the court. The court told defendant that the sentencing guidelines were advisory only and that defendant had an opportunity to tell the court if he wanted to be resentenced, but he could ask not to be resentenced. Defendant requested to be resentenced. Defense counsel affirmed that defendant desired to be resentenced.

The lower court stated that it had reviewed the PSIR and the transcript of the original sentencing hearing. Respecting the sentences imposed originally by the trial court, the lower court stated that it would not have imposed a materially different sentence given the record available to the court. The court stated that the sentencing guidelines were no longer compulsory and only advisory. The court explained that it analyzed each of the crimes of which defendant had been convicted and considered all of the events that took place in the commission of the crimes. The court ruled that it would not impose a materially different sentence upon defendant. The court, therefore, declined to resentence defendant. The court permitted defendant to personally address the court and he argued again that the 180-day period had elapsed requiring his release from prison. The court disagreed. Defendant now appeals.

## II. STANDARDS OF REVIEW

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007) (citation omitted). In this case, on remand, defendant requested that the circuit court resentence him, but the court declined his request. Therefore, defendant preserved for appeal the issue of resentencing.

Defendant, however, did not object to the court's holding the *Crosby* hearing via Zoom. To preserve claims of error, a party must object before the lower court. See *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). To preserve for review by this Court a constitutional error claim that implicates a defendant's due-process rights, the issue must be raised in the trial court. *People v Williams*, 245 Mich App 427, 430-431; 628 NW2d 80 (2001). In this case, defendant did not raise the issue of his physical presence at the *Crosby* hearing and made no objection to appearing remotely via Zoom. Therefore, he failed to preserve the issue for appellate review.

To preserve a claim of ineffective assistance of counsel, a defendant must move in the trial court for a *Ginther* hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Defendant did not raise the alternative issue of ineffective assistance of counsel before the lower court or move for a *Ginther*[6] hearing in this Court. Therefore, defendant failed to preserve for appeal his alternative claim of error.

---

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant also did not object in the lower court after remand to defense counsel's appointment to represent him in the *Crosby* hearing, raised no issue of lack of preparation, conflict of interest, nor did he even intimate that his counsel performed deficiently. Defendant did not move for an evidentiary hearing to address his ineffective assistance claim. Defendant, therefore, did not preserve for appeal any of the claims of error he asserts in his Standard 4 brief.

We review de novo a trial court's statutory interpretation, and for an abuse of discretion its sentencing decisions. *People v Babcock*, 469 Mich 247, 253; 666 NW2d 231 (2003). We review a trial court's denial of a motion for resentencing for an abuse of discretion. *People v Puckett*, 178 Mich App 224, 227; 443 NW2d 470 (1989). An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).

We review defendant's unpreserved constitutional claim for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under the plain-error rule, defendant bears the burden to prove: 1) an error occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings. *Id*. If defendant satisfies those three requirements, this Court must determine whether the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence. *Id*.

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We review the trial court's findings of fact, if any, for clear error, and review de novo its conclusions of law. *Petri*, 279 Mich App at 410. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. Because defendant failed to preserve the ineffective assistance issue, and no evidentiary hearing has been held, our review is limited to mistakes apparent on the lower court record. See *People v Seals*, 285 Mich App 1, 17, 19-20; 776 NW2d 314 (2009).

## III. ANALYSIS

Defendant argues that, on remand the presiding judge was newly appointed, requiring that defendant appear in-person for the *Crosby* hearing, and the court erred because it conducted the hearing via Zoom without him present, which now requires that he be resentenced or at least be granted another hearing at which he can attend in-person. We disagree.

In *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), our Supreme Court explained the *Crosby* remand procedure:

> [W]e conclude that a trial court considering a case on a *Crosby* remand should first and foremost include an opportunity for a defendant to avoid resentencing by promptly notifying the trial judge that resentencing will not be sought. If the defendant does not so notify the court, it should obtain the views of counsel, at least in writing, but need not require the presence of the Defendant, in reaching its decision (with or without a hearing) whether to resentence. Upon making that decision, the trial court shall either place on the record a decision not to resentence,

-4-

with an appropriate explanation, or vacate the sentence and, with the Defendant present, resentence in conformity with this opinion.

Stated differently, on a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Id*. at 398 (quotation marks, alteration, and citations omitted).]

In *People v Steanhouse*, 500 Mich 453, 461-462; 902 NW2d 327 (2017), our Supreme Court reiterated that the remedy for the constitutional infirmity of mandatory application of the sentencing guidelines is to have trial courts on *Crosby* remand determine if the court would have imposed a materially different sentence if it had been aware that the guidelines were not mandatory, and departure sentences must be reviewed for reasonableness. Reasonableness of a sentence is determined by applying the principle of proportionality articulated in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires that the sentence imposed by the trial court be proportionate to the seriousness of the circumstances of the offense and the offender. *Id*. at 474-475, 476.

"A sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual punishment." See *People v Posey*, 334 Mich App 338, 358; 964 NW2d 862 (2020), citing *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008); see also *People v Steanhouse (On Remand)*, 322 Mich App 233, 238; 911 NW2d 253 (2017). To overcome the presumption that the sentence is proportionate, "a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000).

A defendant is entitled to representation by counsel at the time of the *Crosby* remand. *People v Howard*, 323 Mich App 239, 247; 916 NW2d 654 (2018). In *Howard*, this Court considered the procedure for *Crosby* hearings where the original sentencing judge is no longer available and a newly assigned judge must preside over the proceedings. This Court concluded:

When a newly assigned judge handles a *Crosby* remand without ever encountering the defendant, both the personal nature of sentencing, and perceptions of the fairness, integrity, and public reputation of the judicial proceeding are called into question. We conclude that when the original sentencing judge is unavailable, in addition to following the other *Crosby* remand requirements, the assigned judge must allow the defendant an opportunity to appear before the court and be heard before the judge can decide whether he or she would resentence the defendant. [*Id*. at 252-253 (citations omitted).]

-5-

In a footnote, this Court explained further:

> We ruled in *Heller* that a trial court may not sentence a defendant via videoconference because the intensely personal nature of the sentencing process calls for direct contact. [*People v* ]*Heller*, 316 Mich App [314,] 319-321[; 891 NW2d 541 (2016)]. The trial court's initial determination on a *Crosby* remand is not a sentencing in the same sense as that addressed in *Heller*, and if the trial court should decide to resentence the defendant subsequent to a *Crosby* remand, the court must have the defendant present. *Lockridge*, 498 Mich at 398. However, in those unique and presumably rare situations in which a newly assigned judge conducts a *Crosby* remand for a defendant that has never appeared before the trial court, the analysis more closely resembles the type of situation seen in *Heller* than when the *Crosby* remand is conducted by a sentencing judge familiar with the defendant and the defendant's case. [*Howard*, 323 Mich App at 252-253 n 9.]

A criminal defendant has a constitutional right to be present at any stage of a trial during which substantial rights might be adversely affected, including during sentencing. *Illinois v Allen*, 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353 (1970); see also *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984) (stating that a defendant has the "right to be present" during "imposition of sentence").[7] MCR 6.006(A) addresses when a defendant may be at a separate location as follows:

> District and circuit courts may use two-way interactive video technology to conduct the following proceedings between a courtroom and a prison, jail, or other location: initial arraignments on the warrant or complaint, probable cause conferences, arraignments on the information, pretrial conferences, pleas, sentencings for misdemeanor offenses, show cause hearings, waivers and adjournments of extradition, referrals for forensic determination of competency, waivers and adjournments of preliminary examinations, and hearings on postjudgment motions to amend restitution.

A felony, as opposed to a misdemeanor, is an offense for which the offender may be imprisoned in state prison or punished by death. See MCL 750.7. In this case, the jury convicted defendant of felonies, and the trial court sentenced defendant for his felony convictions as a fourth-offense habitual offender under MCL 769.12 because defendant had three or more prior felony

---

[7] The *Mallory* Court did not state that the constitution afforded defendant that right, but this right may be understood as emanating from the Due Process Clause of the 14th Amendment because of the importance of sentencing in the criminal process, which includes a defendant's ability to address the court prior to the sentence being imposed. See *United States v Diggles*, 957 F3d 551, 558 (CA 5, 2020); *United States v Williams*, 641 F3d 758, 764 (CA 6, 2011); *United States v Jacques*, 321 F3d 255, 262-263 (CA 2, 2003); *United States v Agostino*, 132 F3d 1183, 1199 n 7 (CA 7, 1997), and *United States v Jackson*, 923 F2d 1494, 1496 (CA 11, 1991). This Court is bound by the United States Supreme Court's decisions but not by decisions of any lower federal court. *Bienenstock & Assoc Inc v Lowry*, 314 Mich App 508, 515; 887 NW2d 237 (2016). Lower federal court decisions may be persuasive but they are not binding on state courts. *Id*.

convictions before the jury convicted him of the charged offenses in this case. Therefore, the proceedings in defendant's case did not fall within the list of proceedings during which a defendant may participate via two-way interactive video under MCR 6.006(A). Further, under *Howard*, "the assigned judge must allow the defendant an opportunity to appear before the court and be heard before the judge can decide whether he or she would resentence the defendant." *Howard*, 323 Mich App at 253.

Generally, a defendant should "raise objections at a time when the trial court has an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights." *People v Grant*, 445 Mich 535, 551; 520 NW2d 123 (1994). In this case, the judge had familiarity with defendant's case because he reviewed and decided defendant's motion for relief from judgment during 2015. The record, however, does not indicate that the judge had personal contact with defendant at any time before conducting the *Crosby* hearing.[8]

---

[8] While defendant did not specifically waive being physically present at the April 1, 2021 hearing, after the trial judge concluded the U.S. District Court order to initiate the process within 180 days of its October 1, 2020 order had been complied with, the following colloquy took place:

> *The Court:* So, the next step is, Mr. Burton [defense counsel], to hear from you and your client. Are you requesting resentencing?
>
> *Mr. Burton*: Your Honor, I have no objection to—I know that Mr. Nguyen would like to be heard and so I would have no objection to you doing that directly if he wished (inaudible) the Court.
>
> I would—had a discussion with him—I (unintelligible) with that. And, I've discussed the options made available. And, so I would ask that you ask him directly the requirement (inaudible) you'd hear from him before you make your decision, too.
>
> *The Court:* All right. Thank you. Mr. Nguyen, so the options as you've heard Mr. Burton stated. You know, you have an opportunity to say that you don't want to be sentenced now that the sentencing guidelines are not binding on the Court, they're only advisory.
>
> Or, you can ask to be resentenced. What would you like to do?
>
> *The Defendant*: I want a resentence.
>
> *The Court:* I'm sorry, you said you do want to be resentenced?
>
> *The Defendant:* Yes, sir.

Had defendant objected to his lack of physical presence during the *Crosby* hearing, the court could have immediately adjourned the proceedings, and this issue on appeal may have been avoided. There is no indication on the record that defendant or his counsel objected to proceeding by Zoom. Defendant raises this issue for the first time on appeal.

Defendant's *Crosby* hearing occurred during the COVID-19 pandemic. At the time of defendant's *Crosby* hearing, the Supreme Court had entered Administrative Order No. 2020-6, which required courts to make good faith efforts to hold all proceedings remotely in light of the precautions instituted during the early phases of the COVID-19 pandemic. See 505 Mich xc. While that order essentially required remote proceedings, it also cautioned trial courts to employ remote proceedings "consistent with a party's constitutional rights." Although conducting the *Crosby* hearing remotely violated MCR 6.006(A), AO 2020-6 superseded that rule while it remained in effect until rescinded by order entered July 26, 2021, a few months after defendant's *Crosby* hearing. Nevertheless, in *Heller*, 316 Mich App at 318-319, this Court recognized that defendants have a constitutional right to appear physically at their felony sentencings and virtual appearance is not a suitable substitute, and in *Howard*, 323 Mich App at 253, this Court extended application of that principle to the first phase of a *Crosby* hearing at which a newly assigned judge must decide whether the court would resentence the defendant. Although defendant failed to preserve his constitutional claim of error, we conclude he has established that the lower court committed plain error.

Nevertheless, because this Court is addressing an unpreserved nonstructural error, to obtain relief defendant must also prove that the error affected his substantial rights—i.e., prejudiced defendant by affecting the outcome of the proceedings. *Carines*, 460 Mich at 763. Defendant, therefore, must establish that, had he been physically present in the courtroom, there is a reasonable probability that the lower court's decision regarding whether to resentence defendant would have been different. If defendant establishes that, this Court must exercise its discretion in deciding whether to reverse. *Id*. at 763. "Reversal is warranted on when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of defendant's innocence." *Id*. at 763-764 (quotation marks, alterations, and citation omitted). Accordingly, this Court must determine whether the plain error affected the lower court's decision and, if it did so, whether it

---

*The Court:* Okay. Mr. Burton, what's your—do you agree with that?

*Mr. Burton*: If that's what he wishes, then I would have the Court resentence my client.

*The Court:* All right. And, Mr. Brooks [the prosecutor], do you have any objection to that before we proceed to resentencing?

*Mr. Brooks*: We don't, your Honor.

also seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.* at 763-764; *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

Defendant does not argue that the plain error affected the outcome of the lower court's decision to decline resentencing. Instead, he challenges the fairness and integrity of the *Crosby* hearing because the court ruled without his physical presence. Although this Court is dealing with a constitutional right, it is not dealing with a structural error, as (1) the right to be physically present at sentencing is designed to protect the defendant from an erroneous sentence, and not necessarily to protect some other interest, (2) the effects of sentencing a defendant remotely is not too difficult to measure, and (3) the error will not always result in fundamental unfairness. *Weaver v Massachusetts*, 582 US __; 137 S Ct 1899, 1908; 198 L Ed 2d 420 (2017). "The list of structural errors that the Supreme Court has recognized is short and limited," and the "Supreme Court has never held that the exclusion of a defendant from a critical stage of his criminal proceedings constitutes a structural error." *Campbell v Rice*, 408 F3d 1166, 1172 (CA 9, 2005) (en banc). "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v Clark*, 478 US 570, 578-79; 106 S Ct 3101; 92 L Ed 2d 460 (1986).

Defendant's remote participation in the *Crosby* hearing was not a structural error. His physical absence from the courtroom—but actual participation in the hearing—did not restrict defendant's ability to present any argument in favor of resentencing. *Rose*, 478 US at 579. See also *Sullivan v Louisiana*, 508 US 275, 283; 113 S Ct 2078; 124 L Ed 2d 182 (1993) (Rehnquist, C.J., concurring). Nor did defendant's remote participation affect the composition of the record, or otherwise undermine the fairness of the criminal proceeding as a whole. *Washington v Recuenco*, 548 US 212, 218-19; 126 S Ct 2546; 165 L Ed 2d 466 (2006); *Neder v United States*, 527 US 1, 7-8; 119 S Ct 1827; 144 L Ed 2d 35 (1999) (defining structural error). The record does not indicate that the error had any effect on the lower court's decision regarding resentencing. Except for his physical absence from the courtroom, defendant's *Crosby* hearing was handled throughout in a constitutional manner. The record reflects that at no time whatsoever did defendant or his counsel interpose any objections to the manner in which the *Crosby* hearing took place. The record establishes that the lower court dealt with defendant in a thoughtful, humane, and respectful way. The court permitted defendant and his counsel to confer privately. The court permitted defendant on more than one occasion to address the court directly. Defendant offers no substantive argument challenging the validity of the lower court's decision not to resentence defendant.

That this error was not a structural one does not detract from the importance of the constitutional right, and the impact of defendant appearing remotely must be separately analyzed. See, e.g., *Heller*, 316 Mich App at 319-320; *United States v Lawrence*, 248 F3d 300, 304 (CA 4, 2001); *United States v Fagan*, 464 F Supp 3d 427, 429-30 (D Me, 2020).

Defendant does not suggest any irregularities with the hearing other than that a newly assigned judge presided and defendant did not attend the *Crosby* hearing in-person. The record reflects that he and his counsel were active participants and were able to make any arguments or statements in support of defendant's position. Defendant and his counsel addressed the court. The court had no difficulty listening to defendant. The record reflects that the court had familiarity with the case and stated on the record that it reviewed the file in preparation for the hearing. There

is no evidence, inference, nor indication that defendant's treatment likely would have been different had he been face-to-face with the judge.

Defendant did not argue on remand that his original sentence violated the proportionality principle, nor did he offer any explanation or argument that the trial court erred in scoring of the guidelines or calculation of the guidelines minimum range. Analysis of the record in this case indicates that, at the time of defendant's original sentencing, the trial court assessed defendant 60 points for his prior record variable (PRV) total which placed him in a PRV Level E. The trial court assessed defendant a total of 50 OV points which placed him in OV Level V. Defendant's PSIR indicates that the trial court assessed 25 points for OV 1 (aggravated use of a weapon, MCL 777.31), 5 points for OV 2 (lethal potential of weapon possessed or used, MCL777.32), 10 points for OV 3 (physical injury to victim, MCL777.33), and 10 points for OV 9 (number of victims, MCL 777.39). Analysis of the trial court record indicates that the facts necessary to prove the elements of the three charged offenses were presented to the jury via witnesses' testimonies at trial, particularly the testimony of the victim's girlfriend who testified regarding the incident which she personally witnessed, including that defendant beat the victim and then wielded a knife and cut him. Another witness testified that he stood outside the apartment on the steps when the victim ran out and he saw defendant with the knife and told defendant he should stop. Defendant, however, put the knife in the witness's face in a threatening manner that made him terrified that he would die. The jury found defendant guilty of the charged offenses. The evidence established the grounds for the trial court's scoring of the PRVs and OVs. The guidelines sentencing grid for Class D offenses provides that, for a fourth-offense habitual offender with a PRV Level E and OV Level V, the recommended minimum sentence range is 34 months to 134 months. At the time of defendant's original sentencing, MCL 769.12[9] provided in relevant part:

(1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

(a) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for life or for a lesser term.

\* \* \*

_____

[9] The Legislature amended MCL 769.12, effective on October 1, 2012, to specify a mandatory minimum sentence of 25 years if a habitual offender's subsequent felony is a serious crime as defined in the statute and one or more of the defendant's prior felony convictions are "listed" prior felonies as defined in the statute. Defendant committed the crimes of which the jury convicted him on May 9, 2012. Therefore, the amended statute does not apply but the former version applied at the time of sentencing.

(2) If the court imposes a sentence of imprisonment for any term of years under this section, the court shall fix the length of both the minimum and maximum sentence within any specified limits in terms of years or a fraction of a year, and the sentence so imposed shall be considered an indeterminate sentence. The court shall not fix a maximum sentence that is less than the maximum term for a first conviction.

"If a statute mandates a minimum sentence for an individual sentenced to the jurisdiction of the department of corrections, the court shall impose sentence in accordance with that statute," and such a mandatory minimum sentence is not considered a guidelines "departure." MCL 769.34(2)(a). This Court has held that mandatory minimum sentences are presumptively proportionate and do not violate the principle of proportionality set forth in *Milbourn*. *People v Williams*, 189 Mich App 400, 404; 473 NW2d 727 (1991). " 'In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate.' " *People v Bowling*, 299 Mich App 552, 557-558; 830 N2d 800 (2013), quoting *Lee*, 243 Mich App at 187.

In this case, the trial court originally sentenced defendant as a fourth-offense habitual offender under MCL 769.12 to a 132-month minimum sentence. Defendant's minimum sentence fell within the sentencing guidelines minimum range of 34 months to 134 months. Defendant's minimum sentence, therefore, was presumptively proportionate. *Posey*, 334 Mich App at 358. Defendant does not argue that the sentence imposed by the trial court was disproportionate to the seriousness of the circumstances surrounding the offense and the offender. *Steanhouse*, 500 Mich at 459-460. He has not presented unusual circumstances that render his sentence disproportionate. The record indicates that at the *Crosby* hearing the lower court considered the circumstances surrounding the offense and the offender and analyzed the original sentences imposed by the trial court. The lower court determined that it would not impose a materially different sentence from defendant's original sentence. Therefore, the court declined to resentence defendant. The lower court did not abuse its discretion in so deciding. Accordingly, we cannot conclude that a reasonable probability existed that the outcome of the *Crosby* heaering would have been different. Because defendant has failed and cannot meet the third prong of the *Carines* test, his assignment of error regarding his *Crosby* hearing being conducted remotely by a newly assigned judge fails.

Even if we concluded that defendant satisfied the three requirements set forth in *Carines*, we must exercise discretion in deciding whether to reverse. We do not find reversal warranted here where the plain, forfeited nonstructural error did not seriously affect "the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763-764. The lower court did not err by declining to resentence defendant. Nothing in the record supports the conclusion that, had the trial court been aware that guidelines were advisory only, it would have imposed a materially different sentence. Nor does the record establish that the lower court presiding over the *Crosby* hearing should have concluded that defendant had entitlement to a materially different sentence and granted defendant's request for resentencing. Accordingly, defendant is not entitled to resentencing or another *Crosby* hearing.

Defendant argues alternatively that his assigned counsel at the *Crosby* hearing provided him ineffective assistance by not objecting to the *Crosby* hearing procedure related to conducting the hearing without his in-person presence. We disagree.

-11-

Because defendant failed to preserve the issue, and no evidentiary hearing has been held, this Court's review is limited to mistakes apparent on the lower court record. *Seals*, 285 Mich App at 17. A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks and citation omitted). To prevail on an ineffective assistance of counsel claim, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2021) (citations omitted). "In addition to proving that defense counsel's representation was constitutionally deficient, defendant must show that but for counsel's deficient performance, a different result would have been reasonably probable." *Id*. at 55-56 (quotation marks and citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (quotation marks and citation omitted). Defendant must overcome a strong presumption that his counsel provided effective assistance. *Seals*, 285 Mich App at 17. This Court does not second-guess counsel on matters of strategy or assess counsel's competence with the benefit of hindsight. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Whether defense counsel should have objected to the lower court's conducting the *Crosby* hearing in defendant's absence from the courtroom is a close question, given that the COVID-19 virus's transmission had not abated and AO 2020-6 remained in effect for the purpose of protecting the health of the parties, their counsel, and court personnel. Nevertheless, under *Howard*, defendant had the right to in-person attendance and defense counsel could have raised a valid objection to proceeding without defendant present in the courtroom. Therefore, defendant has established the first element of his ineffective assistance claim, that his counsel's performance fell below an objective standard of reasonableness by not objecting to defendant's absence. Defendant, however, has failed and cannot establish that, but for his counsel's deficient performance, a reasonable probability exists that the outcome of the *Crosby* hearing would have been different. The record does not support defendant's claim that, had he been present at the proceedings, the lower court's decision would have been favorable and the court would have decided to resentence defendant. Defendant points to no ground for resentencing, nor any reason the outcome would have been different. He merely offers the unsupported opinion that the outcome would have been different.

In his Standard 4 brief, defendant argues that his counsel failed to diligently research or review the case before the *Crosby* hearing, failed to obtain postconviction filings, lacked preparedness, failed to object to anything, and failed to address any possible conflicts of interest that may have remained from his initial assignment. Defendant's arguments are unpersuasive. The record indicates that defense counsel provided representation during defendant's trial and had a full understanding of the facts of this case and knowledge of the applicable law. Defendant's assertion that defense counsel lacked preparation is not apparent in the record. The record indicates that defense counsel did not object to conducting the hearing via Zoom, but as previously explained, COVID-19 remained active and AO 2020-6 remained in force. Defense counsel's decision not to object appears reasonable given the circumstances of the pandemic at the time of

the *Crosby* hearing.  But, even if defense counsel's performance fell below the applicable standard, defendant has failed to establish that the outcome would have been different.

Respecting defendant's claim of ineffective assistance for not addressing any possible conflict of interest, defendant failed to raise the issue in the lower court, and he fails to establish in his brief whether a conflict of interest actually existed or if such purported conflict sufficed to disqualify defense counsel from representing defendant at the *Crosby* hearing.  We find no mistakes are apparent in the record, and therefore, defendant has failed to establish that his counsel's performance fell below an objective standard of reasonableness in this regard.  And even assuming deficient performance, defendant cannot establish that but for his counsel's performance the outcome of the *Crosby* hearing would have been different.  Defendant, therefore, is not entitled to resentencing or another *Crosby* hearing.

We hold that, although the lower court plainly erred by not having defendant present in-person at the *Crosby* hearing, defendant has failed and cannot establish that the lower court's plain error prejudiced defendant because he cannot establish that the proceedings would have resulted differently if he had been present in-person at the *Crosby* hearing.  Further, defendant has failed to establish that defense counsel's performance, even if it fell below an objective standard of reasonableness, affected the outcome of the *Crosby* hearing.  Defendant, therefore, is not entitled to resentencing or another *Crosby* hearing.

Affirmed.

/s/ David H. Sawyer
/s/ James Robert Redford

-13-